**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| TRACY LYNN HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01204-JDB-egb |
| | ) | |
| JAMES M. HOLLOWAY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254,
DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Before the Court is the Petition under 28 U.S.C.A. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition") filed by Petitioner, Tracy Lynn Harris, Tennessee Department of Correction ("TDOC") prisoner number 317389, who is currently incarcerated at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. (Pet., *Harris v. Holloway*, No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Petition is DENIED.

## I. BACKGROUND

### A. State Court Procedural History

On January 3, 2000, a grand jury in Carroll County, Tennessee returned a three-count indictment against Harris. (Indictment, *State v. Harris*, No. 20CR1470 (Carroll Cnty. Cir. Ct.), ECF No. 24-1 at PageID 175-78.) Count 1 charged Petitioner with the first-degree murder of Madelyn Ruth Bomar on or about October 30, 1998. Count 2 alleged Harris committed the

first-degree murder of Bomar during the perpetration of a felony, namely, aggravated burglary and aggravated rape. Count 3 involved the especially aggravated burglary of the residence of Bomar by the inmate. Count 4 charged Harris with the aggravated rape of the victim. On January 14, 2000, the State filed notice of its intent to seek the death penalty. (Not. of Intent to Seek Death Penalty, *id.*, ECF No. 24-1 at PageID 184.)

On March 2, 2000, pursuant to a written plea agreement, Petitioner pleaded guilty to Counts 2 and 4 of the indictment in exchange for a negotiated sentence of life imprisonment without the possibility of parole for the felony murder and a concurrent term of twenty years at 100 percent for the aggravated rape. (Request for Acceptance of Plea of Guilty & Pet. to Waive Trial by Jury & to Waive an Appeal, *id.*, ECF No. 24-1 at PageID 187-88.) Judgments were entered on March 20, 2000. (J., *id.*, ECF No. 24-1 at PageID 189 (Count 2); J., *id.*, ECF No. 24-1 at PageID 190 (Count 4).) Harris did not take a direct appeal.

On November 17, 2000, the inmate filed a *pro se* petition in the Carroll County Circuit Court pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-201 to -222. (Pet. for Relief from Conviction or Sentence, *Harris v. State*, No. 20CR1470PC (Carroll Cnty. Cir. Ct.), ECF No. 24-1 at PageID 192-98.) He checked the box on the form petition for "Conviction was based on unlawfully induced guilty plea or guilty plea involuntarily entered without understanding the nature and consequences of the plea," "Denial of effective assistance of counsel" and "Other grounds" (*id.* at PageID 196), but provided no factual support for his claims. On December 1, 2000, the post-conviction court summarily dismissed the petition for failure to assert a colorable claim. (Preliminary Order (No Colorable Claim), *Harris v. State*, No. 20CR1470PC (Carroll Cnty. Cir. Ct.), ECF No. 24-1 at

PageID 204.) The court found that "[t]he petition simply makes bare allegations that constitutional rights have been violated without accompanying factual basis for the grounds alleged" and that "T.C.A. § 40-30-206(d) provides in part that failure to state a factual basis for the grounds alleged shall result in an immediate dismissal of the petition." (*Id.*) Harris did not appeal.[1]

On July 13, 2006, Harris filed a *pro se* petition for a writ of habeas corpus in the Criminal Court for Morgan County, Tennessee, in which he argued that his sentence for aggravated rape was illegal and, consequently, that his guilty plea was invalid because the trial judge had failed to sentence him to community supervision for life upon release, as required by state law. (Pet. for Writ of Habeas Corpus, *Harris v. Worthington,* No. 9240 (Morgan Cnty. Crim. Ct.), ECF No. 24-21 at PageID 774-79.) The State responded to the petition on April 7, 2008. (Resp. in Opp'n to Habeas Corpus Pet., *id.*, ECF No. 24-21 at PageID 793-801.) After counsel was appointed (Order Appointing Legal Counsel, *id.*, ECF No. 24-21 at PageID 824; Order of Substitution & Withdrawal, *id.*, ECF No. 24-21 at PageID 823), a hearing on the petition occurred on September 15, 2008. (Tr., *id.*, ECF No. 24-22.) At that proceeding, Petitioner testified that community supervision was not addressed during the guilty plea hearing. (*Id.* at 8.) He explained that an amendment to his aggravated rape judgment to impose a community supervision requirement would not be proper because "the community supervision statute on its face is defined as

---

[1]At some point during the next years, Harris escaped from custody. After his arrest, he pleaded guilty to one count of felony escape and was sentenced to a term of imprisonment of two years, to run consecutively to his sentences for felony murder and aggravated rape. *See Harris v. Worthington,* No. W2008-00603-CCA-R3-HC, 2008 WL 3892031, at *1 (Tenn. Crim. App. Aug. 22, 2008). The Petition does not address the escape conviction. Respondent has, for some reason, produced the record of state proceedings challenging the escape conviction.

punishment. The judgment reflects 20 years, the State's trying to utilize the habeas corpus to secure additional punishment and that's a breach of the plea agreement." (*Id.*) On October 8, 2008, the court denied the habeas petition but remanded the case "to the Carroll County Circuit Court for entry of an amended judgment on the petitioner's aggravated rape conviction, No. 20CR1470, so as to direct a sentence of community supervision for life, pursuant to Tenn. Code Ann. § 39-13-524 and *State v. Bronson,* 172 S.W.3d 600 (Tenn. Crim. App. 2005)." (Order Denying Habeas Corpus Relief on the Pet'r's Convictions & Granting Limited Relief on the Pet'r's Aggravated Rape Sentence at 1-2, *Harris v. Worthington,* Case No. 9240 (Morgan Cnty. Crim. Ct.), ECF No. 24-1 at PageID 217-18.)[2]

Harris appealed from the denial of habeas relief. (Not. of Appeal, *id.*, ECF No. 24-21 at PageID 835.) The Tennessee Court of Criminal Appeals ("TCCA") affirmed, reasoning as follows:

> Relevant to our analysis is *Smith v. Lewis*, 202 S.W.3d 124 (Tenn. 2006), wherein our supreme court held that when a judgment imposed pursuant to a negotiated plea agreement contains an illegal element, the Petitioner must show that the illegality was a bargained-for element of the plea agreement in order to set aside the conviction. Conversely, if the illegality is not proven to be a bargained-for element, then only the sentence is void and the habeas corpus court should remand the case to the convicting court for correction of judgment. *Id.* at 128–129; *but see McLaney v. Bell*, 59 S.W.3d 90 (Tenn. 2001) (where defendant bargains for and receives an illegal sentence, the result on habeas corpus review is an option to resentence or to withdraw the guilty plea and recommence prosecution). Thus, unless the Petitioner can prove that his guilty pleas and resulting convictions are "infected with the illegality" caused by the absence of the community supervision condition on the aggravated rape judgment, the only relief available is the correction of judgment upon remand to the convicting court. *Smith*, 202 S.W.3d at 129.

---

[2]The order does not appear in the technical record for the Morgan County habeas petition.

At the evidentiary hearing, the State conceded that the aggravated rape judgment was void on its face because the trial court failed to impose community supervision for life as a condition of release upon service of the sentence. However, the State argued that unless the Petitioner could prove that the condition was a material element of the plea bargain, the only appropriate relief would be correction of the judgment by the trial court. The Petitioner testified that there was no discussion regarding the community supervision for life condition during plea negotiations. The plea acceptance form does not include any reference to community supervision.

Our review of the record further reveals that the Petitioner was warned by counsel that if he were successful in obtaining a withdrawal of the plea agreement, he could potentially face the death penalty for the felony murder charge. The plea acceptance form also confirms that the possible sentence the Petitioner faced for the felony murder charge included the death penalty. The record indicates that the plea negotiations focused appropriately upon the Petitioner's avoidance of the death penalty and convictions for the additional offenses that were dismissed, rather than the conditions of release from the aggravated rape sentence. Furthermore, given that the sentence for the aggravated rape was ordered to be served concurrently with the life without parole sentence, we deem the Petitioner's argument that the community supervision for life condition was a bargained-for element of the plea agreement quite disingenuous. These considerations coupled with the Petitioner's testimony at the evidentiary hearing that there was no discussion of the community supervision condition during plea negotiations lead us to conclude that neither the presence nor the absence of the community supervision condition was a bargained-for element of this plea agreement. Accordingly, the habeas corpus court correctly denied relief and remanded the aggravated rape case to the trial court for correction of the judgment to include community supervision for life.

*Harris v. Worthington,* No. E2008-02363-CCA-R3-HC, 2010 WL 2595203, at *2 (Tenn. Crim. App. June 29, 2010).[3] On January 20, 2011, the Carroll County Circuit Court entered an amended judgment on the aggravated rape count. (Am. J., *State v. Harris*, No. 20CR1470 (Carroll Cnty. Cir. Ct.) (Count 4), ECF No. 24-7 at PageID 477.)

---

[3]In his answer, Respondent states, incorrectly, that, "[o]n June 29, 2010, the Tennessee Court of Criminal Appeals refused to withdraw the defendant's guilty plea in connection with his state habeas-corpus challenge to his aggravated-rape conviction." (Answer at 8, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 28.) In the habeas proceeding, Harris sought to have his guilty pleas declared void; he did not seek to withdraw the pleas.

In the meantime, on October 16, 2008, one week after entry of the Morgan County order directing the Carroll County Circuit Court to issue an amended judgment, Harris filed a motion in the Carroll County Circuit Court to withdraw his guilty pleas on the ground that the State had breached the plea agreement by adding additional conditions to the rape conviction, including community supervision for life and residential and work restrictions. (Mot. to Withdraw Pleas of Guilty, *id.*, ECF No. 24-1 at PageID 205-09.) On October 22, 2008, the trial court summarily denied the motion, reasoning that

> [t]he motion is not timely and is denied first on that basis. T.R.Cr.P. 32(f). Secondly, to the extent that the pending motion could be interpreted as a post conviction proceeding, it is also barred by time and by the fact that it is an impermissible second such petition. T.C.A. § 40-30-102(a) & (c).

(Order on Mot. to Withdraw Pleas of Guilty, *id.*, ECF No. 24-1 at PageID 213.) On October 29, 2008, Petitioner filed a notice of appeal "from the final Judgment entered in this action on 22 Day of October, 2008." (Not. of Appeal, *id.*, ECF No. 24-1 at PageID 232.)[4]

On appeal, the TCCA held that Harris's motion to withdraw his guilty pleas was untimely:

---

[4]On October 23, 2008, the inmate submitted an amended motion to withdraw his guilty pleas, which included, as an attachment, a copy of the order entered by the Morgan County Criminal Court on October 8, 2008. (Am. Mot. to Withdraw Pleas of Guilty, *id.*, ECF No. 24-1 at PageID 214-15; s*ee also* Order Denying Habeas Corpus Relief on the Pet'r's Convictions & Granting Limited Relief on the Pet'r's Aggravated Rape Sentence, *Harris v. Worthington*, Case No. 9240 (Morgan Cnty. Crim. Ct.), ECF No. 24-1 at PageID 217-18.) On the same date, Harris also filed motions asking to be present at any resentencing and seeking the appointment of counsel. (Presence of Def. at Sentence Imposition, *State v. Harris*, No. 20CR1470 (Carroll Cnty. Cir. Ct.), ECF No. 24-1 at PageID 220; Mot. for Appointment of Counsel, *id.*, ECF No. 24-1 at PageID 224.) On October 27, 2008, he moved for leave to withdraw his first motion to withdraw his guilty plea, which had already been ruled on, and sought a ruling on his amended motion. (Mot. to Withdraw, *id.*, ECF No. 24-1 at PageID 231.) On January 12, 2009, an order denying the amended motion to withdraw the guilty pleas was entered. (Order Denying Am. Mot. to Withdraw Pleas of Guilty, *id.*, ECF No. 24-7 at PageID 470.)

The State interprets the petitioner's *pro se* notice of appeal as his attempt to appeal the Carroll County Circuit Court Clerk's October 23, 2008, entry of the copy of the Morgan County Criminal Court's order denying the petition for writ of habeas corpus. The State points out that the petitioner's appeal from the order denying habeas corpus relief is pending before this court in a separate case and argues that this current appeal should be dismissed because the petitioner has no right of appeal from the October 23, 2008, action of the Carroll County Circuit Court Clerk in entering a copy of that order. However, having the benefit of the petitioner's reply brief, we believe that he is actually appealing the Carroll County Circuit Court's denial on October 22, 2008 of his motion to withdraw his guilty pleas.

Tennessee Rule of Criminal Procedure 32(f) provides that a trial court may grant a motion to withdraw a guilty plea for any fair and just reason before the sentence has been imposed. Tenn. R. Crim. P. 32(f)(1). The rule further provides that after the sentence has been imposed but before a judgment becomes final, "the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). "[A] judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003).

The petitioner argues that because the convicting court has not yet entered an amended or corrected judgment in his aggravated rape case, the sentence has not yet been imposed and his motion to withdraw his guilty pleas is therefore timely. He acknowledges that he currently has an appeal of the denial of his petition for writ of habeas corpus pending before the eastern section of this court, but maintains that the "Habeas Corpus Courts [sic] Final Judgment Appeal is a separate matter which is irrelevant in this action." We respectfully disagree. The petitioner relies on the judgment of the habeas corpus court for his argument as to the timeliness of his motion to withdraw his guilty pleas and is, in essence, attempting in his *pro se* motions to obtain the same relief he sought in his petition for writ of habeas corpus. In this case, the petitioner's conviction became final thirty days after the March 20, 2000, entry of his judgments of conviction. Thus, the Carroll County Circuit Court properly denied his motion to withdraw his guilty pleas as untimely. As the Morgan County Criminal Court noted in its order, this court has concluded that a trial court has jurisdiction to correct an illegal sentence at any time. *See [State v.] Bronson*, 172 S.W.3d [600,] 602 [(Tenn. Crim. App. 2005)] (holding that judgment that failed to include statutory requirement of community supervision for life resulted in illegal sentences, which trial court had jurisdiction to correct by amending judgments of conviction). Furthermore, our supreme court has concluded that "where the illegality infects only the sentence, only the sentence is rendered void and habeas corpus relief may be granted to the extent of the sentence only." *Smith v. Lewis*, 202 S.W.3d 124, 130 (Tenn. 2006).

*Harris v. State,* No. W2008-02507-CCA-R3-CD, 2009 WL 1362365, at *2 (Tenn. Crim. App. May 15, 2009).

On May 27, 2011, Petitioner presented a second *pro se* post-conviction petition in the Carroll County Circuit Court that sought to challenge the amended judgment. (Pet. for Relief from Conviction or Sentence, *Harris v. State,* No. 20CR1470 (Carroll Cnty. Cir. Ct.), ECF No. 24-7 at PageID 480-86.) On June 22, 2011, the post-conviction court summarily dismissed the petition. (Order of Summ. Dismissal, *id.*, ECF No. 24-7 at PageID 498-501.) The court explained that the pleading was an impermissible second post-conviction petition (*id.* at PageID 499) and that the issue presented had been previously litigated in the habeas petition and the appeal from the order denying the motion to withdraw the guilty plea (*id.* at 499-500). The TCCA affirmed, *Harris v. State,* No. W2011-01578-CCA-R3-PC, 2011 WL 6747474 (Tenn. Crim. App. Dec. 21, 2011), *appeal denied* (Tenn. Apr. 12, 2012), and held:

> Assuming, under the specific facts of this case, that a defendant may file for post[-]conviction relief from an amended judgment order even where he or she has previously filed for post-conviction relief from the original judgment,[5]

_____

[5] Our Post–Conviction Procedure Act "contemplates the filing of only one (1) petition for post[-]conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a *single* judgment. If a prior petition has been filed *which was resolved on the merits* by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed." Tenn. Code Ann. § 40–30–102(c) (emphasis added). We note that an amended judgment may be distinguishable from a "single" judgment. We also note that, in this case, the Petitioner's initial petition for post-conviction relief was not resolved on the merits. Finally, this Court has previously recognized that a second petition for post[-]conviction relief may proceed on an amended judgment even where a previous post-conviction petition on the original judgment was resolved on the merits. *See Manny T. Anderson v. State*, No. M2004–02116–CCAR3–HC, 2006 WL 739885, at *1–3 (Tenn. Crim. App. Mar. 23, 2006). Our resolution of this case on the merits makes it unnecessary for us to resolve this issue.

post-conviction relief remains available only where the defendant alleges a constitutional violation and sets forth facts in support thereof. *See* Tenn. Code Ann. §§ 40–30–103 (2006); 40–30–106(d) (2006); *Burnett v. State*, 92 S.W.3d 403, 406 (Tenn. 2002). The Petitioner claims that, because the trial court never informed him of the lifetime community supervision requirement at the time he [pleaded] guilty, the amended judgment order adding that sentencing provision renders his plea constitutionally infirm, and he must be allowed to withdraw it.

*Ward* [*v. State,* 315 S.W.3d 461 (Tenn. 2010)] established that a trial court commits constitutional error if it fails to ensure that a defendant pleading guilty to an applicable offense is aware that the sentence includes mandatory lifetime community supervision. *Ward*, 315 S.W.3d at 476. However, even accepting as true the Petitioner's allegation that the trial court did not inform him in March 2000 of the lifetime community supervision aspect of his sentence that was subsequently added in January 2011, *Ward* also held that he is not entitled to set aside his plea if the record demonstrates that the trial court's error is harmless beyond a reasonable doubt. *See id.* In this case, it is uncontroverted that the Petitioner's plea agreement included a sentence of life imprisonment *with no possibility of parole*. Given that the Petitioner is not eligible for parole, he, in actuality, will not ever be subject to the lifetime community supervision requirement. Therefore, any error by the trial court in failing to ensure that he was aware of the community supervision requirement for his aggravated rape conviction is harmless beyond a reasonable doubt. Thus, the Petitioner's argument establishes no claim for post[-]conviction relief. Accordingly, we affirm the post-conviction court's denial of the Petitioner's claim for post-conviction relief.

*Id.* at *2; *see also id.* at *2 n.2 ("Indeed, we question how a lifetime community supervision requirement could be a material component of any plea agreement that also contained a sentence of life imprisonment *with no possibility of parole*.").

On December 10, 2012, Harris filed a *pro* se habeas petition, his second, in the Circuit Court for Lake County, Tennessee. (Pet. for Writ of Habeas Corpus, *Harris v. Steward,* No. 12-CR-9813 (Lake Cnty. Cir. Ct.), ECF No. 49-1 at PageID 1111-16.) Harris argued that his sentence of community supervision for life was illegal because it was imposed eleven years after he was found guilty (*id.* at 1114) and that the trial court failed to award jail credit from September 7, 1999 until January 20, 2011, in violation of Tennessee law (*id.* at PageID 1114-15). On

January 3, 2013, the trial judge summarily denied the habeas petition. (Order Denying Pet. for Writ of Habeas Corpus, *Harris v. Steward,* No. 12-CR-9813 (Lake Cnty. Cir. Ct.), ECF No. 49-1 at PageID 1133-35.) The TCCA affirmed. *Harris v. Steward,* No. W2013-00207-CCA-R3-HC, 2013 WL 4011569 (Tenn. Crim. App. Aug. 6, 2013).

### B.    Procedural History of the Petition

On August 31, 2012, Harris filed the Petition, accompanied by motions seeking leave to proceed *in forma pauperis* and for the appointment of counsel. (Pet., *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1; Appl. to Proceed in District Court without Prepaying Fees or Costs (Short Form), *id.*, ECF No. 2; Mot. for Appointment of Counsel, *id.*, ECF No. 3.) The Court granted leave to proceed *in forma pauperis* on September 10, 2012. (Order, *id.*, ECF No. 4.) The Petition presented the following issues:

1.    "Denial of Assistance of Appointed Counsel" (Pet. at PageID 5, *id.*, ECF No. 1; *see also id.* at PageID 5-6);

2.    "Breached Plea Agreement" (*id.* at PageID 6; *see also id.* at PageID 6-8);

3.    "Denial of a Full and Fair Hearing/sentence (sic) Hearing" (*id.* at PageID 8; *see also id.* at PageID 8-9); and

4.    "Illegal Arrest" (*id.* at PageID 10; *see also id.* at PageID 10-11).

In an order issued on October 2, 2012, the Court denied the motion for appointment of counsel and directed Respondent, Roland Colson, the Warden of the Riverbend Maximum Security Institution in Nashville, Tennessee (the "Warden"), to file the complete state-court record and a response to the Petition. (Order, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No.

5.) The inmate was instructed that any reply should be filed within thirty days of service of the answer. (*Id.* at 4.)

Before Colson had responded to the Petition, Harris filed a number of motions. On October 26, 2012, he moved to expand the record to include various documents in support of the fourth issue ("Claim 4") in the Petition. (Mot. to Expand the Record, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 12.) The Warden responded in opposition to the motion on October 30, 2012. (Resp't's Mem. in Opp'n to Pet'r's Mot. to Expand the Record, *id.*, ECF No. 13.) On November 14, 2012, without seeking leave of Court, Petitioner submitted a reply in further support of his motion to expand the record. (Pet'r's Reply in Supp. of Mot. to Expand the Record, *id.*, ECF No. 17.)

On November 2, 2012, Harris filed two motions seeking leave to conduct discovery. (Mot. for Leave of Court to Conduct Disc., *id.*, ECF No. 14; Mot. for Disc., *id.*, ECF No. 15.) Colson responded to the motions on October 9, 2012. (Resp't's Mem. in Opp'n to Pet'r's Mot. for Leave to Conduct Disc., *id.*, ECF No. 16.) On November 15, 2012, without seeking leave of Court, he filed a reply in further support of his discovery motions. (Pet'r's Reply in Supp. of Mots. for Disc., *id.*, ECF No. 18.)

On December 10, 2012, Harris filed a motion seeking to stay proceedings in this action because his second state habeas petition was pending in the Lake County Circuit Court. (Mot. to Stay Proceedings, *id.*, ECF No. 22.) The Warden filed his response in opposition to the motion on December 18, 2012. (Resp't's Resp. in Opp'n to Pet'r's Mot. to Stay Proceedings, *id.*, ECF No. 28.)

On December 14, 2012, Respondent filed most of the state-court record. (Resp't's Not. of Filing of Documents, *id.*, ECF No. 24.) On December 17, 2012, he submitted a corrected filing of documents, (Resp't's Not. of Corrected Filing, *id.*, ECF No. 26), and filed his answer on December 21, 2012. (Answer, *id.*, ECF No. 28.)

On January 16, 2013, the prisoner filed a notice stating that he had not received the answer and the state-court record. (Compl. [of] Resp't's Refusal to Serve Pet'r, *id.*, ECF No. 30.) On the same date, he filed motions seeking to have the Clerk of Court mail the answer and state-court record to him so that he could prepare his reply. (Pet'r's Mot. to Remove Record to Prepare Brief, *id.*, ECF No. 31; Pet'r's Mot. to Remove Resp't's Answer, *id.*, ECF No. 32; Pet'r's Mot. to Remove Docket Entry # 27, *id.*, ECF No. 33.) On January 22, 2013, the Warden responded to Petitioner's motions, stating, *inter alia,* that copies of the documents had previously been served on Harris and that additional copies were being mailed to him. (Resp't's Resp. in Opp'n to Pet'r's Mot. to Remove Resp't's Answer, *id.*, ECF No. 34; Resp't's Resp. in Opp'n to Pet'r's Mot. to Remove Record to Prepare Brief, *id.*, ECF No. 35; Resp't's Resp. in Opp'n to Pet'r's Mot. to Remove Docket Entry # 27, *id.*, ECF No. 36.)

On March 15, 2013, Harris filed a motion seeking enhanced access to the prison law library. (Mot. for Court Ordered Access to Prison Law Library, *id.*, ECF No. 40.) Colson did not respond to this motion.[6]

On May 10, 2013, the Court issued an order striking Harris' unauthorized reply brief and denying his motion to expand the record. (Order, *id.*, ECF No. 41.) The order explained, *inter*

---

[6]On February 27, 2013, the Court substituted Jerry Lester, the Warden of the WTSP, for Colson as Respondent. (Order, *id.*, ECF No. 39.)

*alia,* that, until the Court addresses whether Claim 4 is barred by procedural default, "no useful purpose will be served by burdening the record with extraneous material." (*Id.* at 2.)

In an order issued on May 20, 2013, the Court denied as moot Harris' motions to withdraw Respondent's various filings because he had represented that he mailed additional copies of the filings at issue to the inmate. (Order, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 42.) On June 5, 2013, the Court issued an order striking Petitioner's unauthorized reply brief and denying his motions for discovery. (Order, *id.*, ECF No. 43.) That order noted that

> Respondent's answer states that any challenge to Petitioner's conviction for felony murder is time-barred and that most of his challenges to his conviction for aggravated rape are barred by procedural default. Any request for discovery is premature until the Court has determined the adequacy of those affirmative defenses and otherwise considered whether the petition asserts any facially plausible constitutional claim.

(*Id.* at 3.)

In an order issued on August 1, 2013, the Court denied the inmate's motion to stay proceedings because the Lake County habeas petition "does not present any of the issues raised in his § 2254 petition" and Harris "cannot obtain relief on those new claims in a federal habeas petition because they arise under Tennessee law." (Order at 3, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 44.) On August 19, 2013, the Court denied Harris' motion for court-ordered access to the prison law library. (Order, *id.*, ECF No. 45.) The order also *sua sponte* extended his time to reply to the answer by thirty days, but explained that, "[b]ecause Petitioner has already had eight months in which to prepare his reply, **no further extensions of time will be granted in the absence of extraordinary circumstances.**

Inadequate access to the law library is not an extraordinary circumstance that will warrant a further extension of time. (*Id.* at 2.)

On October 13, 2013, Petitioner filed a document, titled "Judicial Notice Request," which stated that he was undergoing treatment for an unspecified disease of the eye, that the treatment distorted his vision and that, as a result, he had been unable to prepare a reply. (Judicial Notice Request, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 46.) He sought an order directing the TDOC to provide unspecified treatment. (*Id.* at 2.) He did not, however, provide any information about the length of time he had allegedly been disabled, and he did not seek an extension of time in which to file a reply.[7]

The Court issued an order on November 3, 2014, noting that

Petitioner has filed numerous state-court challenges to his convictions and sentences. The Warden's presentation of the record makes it unreasonably difficult to locate the documents relating to each of those challenges. Respondent's Notice of Filing of Documents (ECF No. 24) refers to the various documents by Addendum, and by document number within several of the addenda. There is no reference to the ECF Number of any of the filed documents, and the description of the twenty-nine documents filed at ECF No. 24 does not allow the Court to identify the proceeding to which each document refers.

---

[7]A habeas petition is not an appropriate means of addressing alleged deficiencies in the medical care provided to prisoners. *See Hodges v. Bell*, 170 F. App'x 389, 392-93, 395 (6th Cir. 2006); *see also Evans v. Eichenlaub*, No. 08-13469, 2008 WL 4771934, at *1 (E.D. Mich. Oct. 29, 2008) (allegation that prisoner was provided inadequate medical care not cognizable in a habeas petition seeking transfer to a medical facility or a residential re-entry center); *Villanueva-Monroy v. Hobart*, No. 05-C-214-C, 2005 WL 941144, at *1 (W.D. Wis. Apr. 18, 2005) ("Even if petitioner were to prove that his medical need is serious and that respondent has been deliberately indifferent to it, he would not be entitled to release or modification of his sentence. The injury he alleges is a claim that must be raised in a civil action brought pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388[] (1971).”). Petitioner's request for a change in his medical treatment is DENIED.

(Order at 1-2, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 47 at 1-2 (footnote omitted).)   The Court observed that "Addendum 2 refers to a direct appeal.   Petitioner filed no direct appeal of his convictions."   (*Id.* at 2 n.2.)   The order further stated that,

> [a]lthough it is not possible to determine with certainty, given the limitations of the index, it appears that Respondent has not filed the complete state-court record. The transcript of the guilty plea does not appear in the record.   No copy of the amendment judgment, which allegedly imposed additional conditions on the conviction for aggravated rape, appears in the record.

(*Id.* at 2.)   Respondent was ordered "to file an amended index to the state-court record within twenty-eight days of the date of entry of this order that includes, in addition to the information provided in the original and corrected notices of filing, the ECF Number of each document filed" and to file the missing portions of the state-court record, including the Lake County habeas petition.   (*Id.*)[8]

On December 1, 2014, Respondent filed an index to the state-court record, which identified where the amended judgment could be found.   (Resp't's Index to the State-Court Record at 2, *Harris v. Holloway*, No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 48.)[9]   The Warden also noted that, "from [his] review of the state-court records, the petitioner does not appear ever to have presented the transcript of his guilty-plea hearing to the Tennessee state courts in any of his various attacks on the legality of his plea."   (*Id.* at 4.)   The same day, Respondent filed the record

---

[8]That order also substituted James M. Holloway, the current WTSP Warden, for Lester as Respondent.   (Order at 1-2, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 47 at 1 n.1.)

[9]Respondent's index did not correct the erroneous reference to a direct appeal.   (Resp't's Index to the State-Court Record at 1, *Harris v. Holloway*, No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 48.)

pertaining to the Lake County habeas petition. (Resp't's Not. of Filing of Documents, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 49.)

On December 10, 2014, the prisoner presented a notice of Respondent's failure to file the guilty-plea transcript and a motion asking that he be ordered to do so. (Not. [of] Resp't's Failure to File Missing Portions of the Record, *id.*, ECF No. 50; Mot. for Complete Filling (sic) of the Record, *id.*, ECF No. 51.) The Warden filed a response in opposition to the motion on December 11, 2014. (Resp't's Resp. in Opp'n to Pet'r's Mot. for Complete Filing of the Record, *id.,* ECF No. 52.) On December 19, 2014, Petitioner replied without seeking leave of Court. (Pet'r's Reply in Supp. of Mot. for Complete Filling (sic) of the Record, *id.*, ECF No. 54.)

On April 9, 2015, Harris moved for leave to file a reply in further support of his Petition after Respondent filed the guilty-plea transcript. (Mot. for Leave to File, *id.,* ECF No. 55.) The Warden did not respond to that motion. On April 17, 2015, the inmate filed his reply without waiting for a decision on his motion. (Reply, *id.,* ECF No. 56.)

In an order issued on May 5, 2015, the Court struck Petitioner's unauthorized reply in support of the motion to compel, granted the motion to compel Respondent to file the guilty-plea transcript and ordered him to do so within twenty-eight days, and denied Petitioner's motion to file an untimely reply after receipt of the transcript. (Order, *id.*, ECF No. 57.) The Court exercised its discretion to consider the reply that Harris had filed on April 17, 2015. (*Id.* at 5 n.4.)

On May 13, 2015, the inmate submitted a document purporting to show that extraordinary circumstances prevented him from filing a timely reply. (Extraordinary Circumstances Supporting Pet'r's Late Filing of Reply, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 58.) On May 28, 2015, Respondent filed a notice that the recording of the

guilty-plea hearing could not be located.   (Not. of Filing, *id.*, ECF No. 59.)   Because a transcript

of the guilty-plea hearing would not be filed, and because the Court previously agreed to consider

the late-filed reply, it is unnecessary to further address Petitioner's claim of extraordinary

circumstances.

## II.    THE STATUTE OF LIMITATIONS

In his answer, Respondent first argues that the Petition is untimely insofar as it seeks to

challenge Harris' conviction for felony murder.   (Answer at 2, 10-12, *Harris v. Holloway,* No.

1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 28.)[10]   Twenty-eight U.S.C. § 2244(d) provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State
court.   The limitation period shall run from the latest of—

---

[10]The entry of an amended judgment on the aggravated rape conviction arguably started a
new § 2254 limitations period for that conviction.   *See Jimenez v. Quarterman*, 555 U.S. 113, 121
(2009) ("[W]here a state court grants a criminal defendant the right to file an out-of-time direct
appeal during state collateral review, but before the defendant has first sought federal habeas
relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A).   In such a case, 'the date on
which the judgment became final by the conclusion of direct review or the expiration of the time
for seeking such review' must reflect the conclusion of the out-of-time direct appeal, or the
expiration of the time for seeking review of that appeal."); *see also Magwood v. Patterson*, 561
U.S. 320, 333-34 (2010) (a death row prisoner's § 2254 petition filed after a resentencing is not
"second or successive" even if it raises new issues that could have been raised in response to the
original judgment, because § 2244 applies to "judgments" rather than to a prisoner's custody).
That Harris is entitled to challenge the new condition imposed in the amended judgment does not
necessarily mean that he is also entitled to raise a challenge to the plea agreement or to events
arising prior to entry of the plea.   *See Magwood,* 561 U.S. at 342 & n.16 (declining to decide
whether petitioners who obtain a conditional writ as to their sentences can file a new habeas
petition that includes challenges to the underlying conviction, but noting that "[s]everal Courts of
Appeals have held that a petitioner who succeeds on a first habeas application and is resentenced
may challenge only the portion of a judgment that arose as a result of a previous successful
action").   It is unnecessary to address whether any of Harris' claims challenging the aggravated
rape conviction might be time-barred because Respondent has elected not to raise that affirmative
defense.

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Because Harris did not appeal his conviction for felony murder, it became final no later than the expiration of the time for taking a direct appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118-19 (2009). The judgments were entered on March 20, 2000. The time for taking a direct appeal expired thirty days later, on April 19, 2000, Tenn. R. App. P. 4(a); *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (a judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence), at which time the running of the limitations period began.

The limitations period was tolled, pursuant to § 2244(d)(2), when Harris filed his post-conviction petition on November 17, 2000. By that time, 211 days of the one-year limitations period had elapsed. The post-conviction court dismissed the petition on December 1, 2000, and the time to appeal that decision expired thirty days later, on January 2, 2001. *See* Tenn.

R. App. P. 4(a); *see also* Tenn. Code Ann. § 40-30-216 ("The order granting or denying relief under this part shall be deemed a final judgment, and an appeal may be taken to the court of criminal appeals in the manner prescribed by the Tennessee Rules of Appellate Procedure. . . .") (2000).[11]   The running of the limitations period recommenced on that date, and it expired 154 days later, on June 5, 2001.   Harris' Petition was signed on August 16, 2012 (*see* Pet. at PageID 14, *Harris v. Holloway*, No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1), more than eleven years after the expiration of the limitations period, and, even if it were deemed to have been filed on that date, *see Houston v. Lack*, 487 U.S. 266, 270-71, 276 (1988); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999), every challenge to the conviction for felony murder is time-barred.[12]   Therefore, Claims 2 and 4 are time-barred insofar as they challenge Harris' plea agreement and conviction for felony murder.

"The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."   *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted).   The § 2254 limitations period is subject to equitable tolling.   *Holland*

---

[11]This provision is currently codified at Tennessee Code Annotated § 40-30-116.   Because the thirtieth day fell on a Sunday and the next weekday was a holiday, Harris had until the next business day to file his § 2254 petition.   *See* Fed. R. Civ. P. 6(a)(1)(C).

[12]Petitioner's various collateral challenges to his sentence for aggravated rape and, by implication, the plea agreement, did not toll the running of the limitations period for the murder conviction because that limitations period had already expired.   *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.   Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."); *Owens v. Stine,* 27 F. App'x 351, 353 (6th Cir. 2001) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

*v. Florida*, 560 U.S. 631, 645 (2010). "[T]he doctrine of equitable tolling is used sparingly by federal courts." *Robertson*, 624 F.3d at 784. "The party seeking equitable tolling bears the burden of proving he is entitled to it." *Id.* A habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).

Harris asserts that the Petition is timely because "[t]he Judgment only became final on April-12-2012 see attached order issued by the Tenn. Supreme court this Petition is being filed less than one year from that date." (Pet. at PageID 13, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.) This statement refers only to the amended judgment for the aggravated rape conviction. For the reasons previously stated, his murder conviction became final on April 19, 2000.

The inmate's reply to the answer does not address the statute of limitations and does not request equitable tolling. (*See* Reply, *id.*, ECF No. 56.) Instead, Harris argues that, if he were to succeed on his challenge to the aggravated rape conviction, he would be entitled to withdraw his plea. He reasons that, because only one plea was entered, that would necessarily invalidate the plea to felony murder as well. (*Id.* at 6.) Although Petitioner is correct that his challenge to the validity of his guilty plea ordinarily would implicate the entire plea agreement, he overlooks the fact that that challenge must be timely. Even if the challenge to the amended judgment on the aggravated rape conviction is timely, the opposition to the murder judgment is not.

Petitioner's apparent ignorance of the law is insufficient to entitle him to equitable tolling. *See Plummer v. Warren*, 463 F. App'x 501, 506 (6th Cir.) ("the district court correctly concluded

that the reasons Plummer actually gave for the delay in filing her petition—namely her need to find help and inexperience in the law—are not extraordinary circumstances warranting equitable tolling"), *cert. denied*, 133 S. Ct. 169 (2012); *Moore v. United States*, 438 F. App'x 445, 449 (6th Cir. 2011) (per curiam) ("Ignorance of the law, even by an incarcerated *pro se* petitioner, is not grounds to toll the statute."); *Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); *Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001) ("Ignorance of the limitations period does not toll the limitations period.").   Harris' escape from custody also provides no basis for equitable tolling.  *See Allen v. Kemp,* No. 88-6287, 1989 WL 54764, at *1 (6th Cir. May 25, 1989); *Harris v. Warden, S. Ohio Corr. Facility,* No. 1:12-cv-261, 2013 WL 492993, at *8 (S.D. Ohio Feb. 7, 2013) (report & recommendation), *adopted,* 2013 WL 1438008 (S.D. Ohio Apr. 9, 2013).   Therefore, he is not entitled to equitable tolling.

The Court DISMISSES Claims 2 and 4 as time-barred insofar as they challenge Harris' conviction for felony murder.

## III.    THE LEGAL STANDARD

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").   A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

A.        **Waiver and Procedural Default**

Twenty-eight U.S.C. § 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  The petitioner must "fairly present"[13] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999).  Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court in order to "be deemed to have exhausted all available state remedies."  *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010) (per curiam) (the *Adams* holding promotes comity by requiring that state courts have the first opportunity to review and evaluate claims and by mandating that federal courts respect the duly-promulgated rule of the Tennessee Supreme Court that recognizes that court's law and policy-making function and its desire not to be entangled in the business of simple error correction).

The procedural default doctrine is ancillary to the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  If the state court decides a claim on an independent and

---

[13]For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citations omitted).  Nor is it enough to make a general appeal to a broad constitutional guarantee.  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977); *see Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). If a claim has never been presented to the state courts, but a state court remedy is no longer available (*e.g.*, when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 732. Under either scenario, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 322 (1995); *Coleman*, 501 U.S. at 749-50. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321; *see House v. Bell*, 547 U.S. 518, 536-39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

**B.    Merits Review**

Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).   The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt."   *Cullen*, 131 S. Ct. at 1398.[14]

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   *Cullen*, 131 S. Ct. at 1399.   A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts."   *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).[15]   An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case."   *Id.* at 412-13.   The state court's application of clearly established federal law must be "objectively unreasonable."   *Id.* at 409.   The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly.   *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Williams*, 529 U.S. at 411.

---

[14]The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a *de novo* review of whether the state court's determination was incorrect.   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[15]The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010).

There is little case law addressing the standard in § 2254(d)(2) that a decision was based on "an unreasonable determination of the facts." However, in *Wood v. Allen*, 558 U.S. 290, 301 (2010), the Supreme Court stated that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. In *Rice v. Collins*, 546 U.S. 333, 341-42 (2006), the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."[16]

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'" *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) (quoting *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)). "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A state court adjudication will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. The Alleged Denial of Counsel (Claim 1)

In Claim 1, titled "Denial of Assistance of Appointed Counsel," Harris alleges that

---

[16] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence. *Wood*, 558 U.S. at 299. The Court ultimately found it unnecessary to reach that issue. *Id.* at 300-01, 304-05. In *Rice*, the Court recognized that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable. *Rice*, 546 U.S. at 339.

> [t]he trial court sentenced defendant on 1-20-2011 without counsel. Counsel was denied in the post-conviction proceeding. The appeallte (sic) court denied counsel on Sept. 15, 2011 by order that post-conviction was filed outside the statuet (sic) of limitations or did not present a colorable claim. On December 21-2011 the appellate court found the post-conviction permissible and colorable and determined the case without assistance of counsel in violation of state law and the U.S. Constitution.

(Pet. at PageID 5, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.)

Although Respondent has not raised this issue, portions of Claim 1 are not cognizable in a § 2254 petition. A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Error in the application of state law is not cognizable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). The post-conviction court's failure to appoint counsel does not provide a ground for federal habeas relief. The United States Constitution does not require States to provide avenues for post-conviction relief, *Pennsylvania v. Finley*, 481 U.S. 551, 557-58 (1987); *see also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."), and, therefore, any deficiencies in those proceedings cannot provide grounds for relief in a § 2254 petition.

The failure of the Carroll County Circuit Court to appoint counsel before entry of the amended judgment on the aggravated rape conviction arguably states a federal constitutional claim. In his answer, Respondent argues that Harris failed to exhaust this claim in state court and, because there are no further means of doing so, it is barred by procedural default. (Answer at

26

12-13, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), EF No. 28.) Petitioner

did not take a direct appeal from the amended judgment entered on January 20, 2011. Instead, he

filed a second post-conviction petition in which he argued, *inter alia,* that he had been denied the

assistance of counsel before entry of the amended judgment. (Pet. for Relief from Conviction or

Sentence at 3-4, *Harris v. State,* No. 20CR1470 (Carroll Cnty. Circ. Ct.), ECF No. 24-7 at PageID

482-83.) The post-conviction court summarily denied the petition on procedural grounds. *See*

*supra* p. 8. In the post-conviction appeal, Harris made no argument that there had been a violation

of his Sixth Amendment right to counsel in connection with the amended judgment. (*See* Br. of

Appellant at 1, *Harris v. State,* No. 2011-01578-CCA-R3-PC (Tenn. Crim. App.), ECF No. 24-8 at

PageID 563.) He also failed to raise the issue in his second state habeas petition, the only other

collateral proceeding filed after the entry of the amended judgment. (*See* Br. of the Appellant

Tracy Lynn Harris at 1, *Harris v. Steward,* No. W2013-00207-CCA-R3-HC (Tenn. Crim. App.),

ECF No. 49-2 at PageID 1143.) This aspect of Claim 1 is barred by procedural default.

Claim 1 is without merit and is DISMISSED.

### B. The Alleged Breach of Contract (Claim 2)

In Claim 2, titled "Breached Plea Agreement," Petitioner contends that he

pled guilty to a specific plea agreement of 20 years to serve for Agg. Rape. On
1-20-2011 the trial court entered an amended Judgment of conviction imposing an
additional consecutive life term for life time supervision and the plea agreement
explicably (sic) forbid it by recognizing that only the sentence within the agreement
shall be imposed. The trial court did breach the specific sentence agreement.

(Pet. at PageID 6-7, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.)

The inmate raised the alleged breach of contract in his brief to the TCCA in the appeal from

the denial of his second post-conviction petition. (*See* Br. of Appellant at 1, *Harris v. State,* No.

2011-01578-CCA-R3-PC (Tenn. Crim. App.), ECF No. 24-8 at PageID 563.) In his answer, Respondent notes that "[t]he precise constitutional issue is left undefined," but that the TCCA construed the issue as a challenge to the intelligent nature of the plea. (Answer at 15, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 28 at PageID 1029.) The Warden then explains why the inmate is not entitled to relief. Although the Court agrees that Harris is not entitled to relief on Claim 2, Respondent's analysis of that Claim is not persuasive.

First, the alleged breach of contract is not cognizable in a federal habeas petition because Petitioner has not alleged a violation of the United States Constitution. (*See* Pet. at PageID 6-7, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.) Alleged violations of state law cannot be litigated in a petition for a writ of habeas corpus under § 2254.

Second, even if Claim 2 were construed as alleging a federal constitutional claim, the inmate did not properly exhaust that claim because it was not presented to the state courts as a federal constitutional issue.

> [O]rdinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

*Baldwin*, 541 U.S. at 32.

> A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by English v. Berghuis*, 529 F. App'x 734, 744-45 (6th Cir. 2013); *see*

*also Pudelski v. Wilson,* 576 F.3d 595, 605-06 (6th Cir. 2009) (same); *Fulcher v. Motley*, 444 F.3d

791, 798 (6th Cir. 2006) (same).

In his brief to the TCCA on the post-conviction appeal, Harris did not cite or refer to the

United States Constitution.   He also did not reference any federal case employing federal

constitutional analysis.   The brief discussion of the merits does not rely on federal constitutional

law:

> In this case, on March 20, 2000 the trial court was presented with a specific
> sentencing contract that for the crime of Agg. Rape the defendant would receive 20
> years to serve.   On March 20, 2000 the contract was accepted and imposed.   Then
> eleven years later on January 20, 2011 the trial court did infact (sic) enter an
> amended Judgment of Conviction imposing an additional consecutive sentence for,
> Life Time Community Supervision <u>T.C.A. 39-13-524</u>.    The sentence of
> community supervision is punitive.   [S]ee, *Ward v. State,* 315 S.W.3d 461 [(Tenn.
> 2010)].   [I]mposition of the consecutive sentence was beyond the "Four Corners"
> of the sentencing contrant (sic), did create a new obligation, imposed a new duty
> and attached a new disability in respect of a transaction or consideration already
> passed in violation of <u>Article I section 20</u> of the <u>Tennessee Constitution</u> and
> defendants Due Process Rights. . . .

(Br. of Appellant at 8-9, *Harris v. State,* No. 2011-01578-CCA-R3-PC (Tenn. Crim. App.), ECF

No. 24-8 at PageID 570 (record citations omitted).)   Petitioner explicitly relies on Article I, § 20

of the Tennessee Constitution, which provides, in pertinent part, that "no . . . law impairing the

obligations of contracts[] shall be made."   Tenn. Const., Art. 1, § 20.   The general reference to

"due process" is insufficient to alert a state court that Harris also intended to assert a federal

constitutional claim.   *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) ("General

allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims

that specific constitutional rights were violated."); s*ee also Baldwin,* 541 U.S. at 33 (the words

"ineffective assistance of appellate counsel" insufficient to fairly present a federal

ineffective-assistance claim).   That the TCCA construed the second post-conviction appeal as

presenting a constitutional claim does not cure Harris' failure to fairly present a federal constitutional claim to the state courts.

Third, even if it were proper to rely on the TCCA's opinion on the appeal of the second post-conviction petition as the source for his constitutional claim, Petitioner has made no showing that the decision of the TCCA was contrary to, or an unreasonable application of, clearly established federal law "*as determined by the Supreme Court of the United States.*" *See* 28 U.S.C. § 2254(d)(1) (emphasis added). The United States Supreme Court has not addressed whether a defendant must be advised that a guilty plea to certain sexual offenses will subject him to mandatory lifetime community supervision. The TCCA's decision relied on the Tennessee Supreme Court's decision in *Ward*, which was based on the Due Process Clause to the United States Constitution and the requirement that a guilty plea must be "knowingly, voluntarily, and intelligently" entered. *Ward*, 315 S.W.3d at 465. In that case, the Tennessee Supreme Court held that the imposition of a sentence of lifetime community supervision is punitive in nature, *id.* at 473, and, therefore, "trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea," *id.* at 476. The state Supreme Court held that "[w]here, as here, the trial court has committed constitutional error by failing to ensure that the defendant is aware of a direct consequence of his or her guilty plea, the judgment of conviction must be set aside unless the State proves that the error was harmless beyond a reasonable doubt." *Id.* at 476. The TCCA did so hold that such failure to advise was harmless beyond a reasonable doubt because Harris was pleading guilty to felony murder in exchange for a sentence of life imprisonment without the possibility of parole. *Harris v. State,* 2011 WL 6747474, at *2. The TCCA explained that, "[g]iven that the Petitioner is not eligible for

parole, he, in actuality, will not ever be subject to the lifetime community supervision requirement." *Id.*

The inmate has not satisfied his burden of demonstrating that the TCCA's holding that the constitutional error was harmless beyond a reasonable doubt was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. "[W]here the precise contours of [a] right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall,* 134 S. Ct. 1697, 1705 (2014) (internal quotation marks omitted). "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme] Court's precedents." *Nevada v. Jackson,* 133 S. Ct. 1990 (2013) (internal quotation marks omitted).

This case is similar to *Glebe v. Frost,* 135 S. Ct. 429 (2014) (per curiam), in which the Washington Supreme Court held that a trial court had erred in refusing to permit a defendant to simultaneously contest criminal liability and argue duress. *Glebe*, 135 S. Ct. at 431-32. The state court ruled, however, that the error was harmless beyond a reasonable doubt. *Id.* at 430. The Ninth Circuit, sitting *en banc*, held that the Washington Supreme court unreasonably applied clearly established federal law by failing to classify the trial court's restriction of closing arguments as structural error. *Id.* The Supreme Court reversed, reasoning that,

> [a]ssuming for argument's sake that the trial court violated the Constitution, it was not clearly established that its mistake ranked as structural error. *Most* constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness. Only the rare type of error—in general, one that infects the entire trial process and necessarily renders it fundamentally unfair—requires automatic

reversal. None of our cases clearly requires placing improper restriction of closing argument in this narrow category.

*Id.* at 430-31 (internal alterations, citations & quotation marks omitted).

Respondent argues, on the basis of the Sixth Circuit's decision in *Ruelas v. Wolfenbarger,* 580 F.3d 403 (6th Cir. 2009), that constitutional error in the taking of a guilty plea is subject to harmless error analysis. (Answer at 18, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 28.) In *Ruelas,* the Sixth Circuit rejected the position that "the remedy for all involuntary guilty pleas is the right to go back, plead innocent, and have a trial. That is sometimes the remedy, but not always . . . ." *Ruelas*, 580 F.3d at 410. The Court of Appeals held that the petitioner in *Ruelas* was not entitled to withdraw his guilty plea because the error did not have "a substantial and injurious effect or influence" on the outcome of the plea process. *Id.* at 413 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)).[17] The burden is on the State to show that the error was harmless. *Id.* (citing *O'Neal v. McAninch,* 513 U.S. 432, 436 (1995)).

The Supreme Court has not held that errors during the taking of a guilty plea are always structural. *See United States v. Davila*, 133 S. Ct. 2139, 2148 (2013) (judicial participation in plea process, in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure, is not structural error); *Puckett v. United States,* 556 U.S. 129, 133-34 (2009) (procedurally forfeited error, arising out of government's breach of plea agreement, is subject to "plain error" review); *United States v. Dominguez Benitez,* 542 U.S. 74, 76 (2004) (a defendant who seeks to withdraw his guilty plea because of the trial judge's failure to give a warning required by Rule 11 must show

---

[17]This standard is less demanding than the harmless beyond a reasonable doubt standard applied by the TCCA in its review of the second post-conviction petition.

a reasonable probability that, but for the error, he would not have entered the plea).    In *Puckett,*

the Supreme Court explained that

> breach of a plea deal is not a "structural" error as we have used that term.    We have never described it as such and it shares no common features with errors we *have* held structural.    A plea breach does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence, *Neder v. United States*, 527 U.S. 1, 9 [] (1999); it does not defy analysis by 'harmless-error' standards by affecting the entire adjudicatory framework; and the difficulty of assessing the effect of the error is no greater with respect to plea breaches at sentencing than with respect to other procedural errors at sentencing, which are routinely subject to harmlessness review.

*Id.* at 140-41 (some internal citations & quotation marks omitted).

In his reply, Harris argues that the decision of the TCCA was contrary to, or an

unreasonable application of, *Santobello v. New York,* 404 U.S. 257 (1971).    (Reply at 1-2, 4,

*Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 56.)    In *Santobello,* the

prisoner had been charged with two felony offenses:    promoting gambling in the first degree and

possession of gambling records in the first degree.    Santobello, 404 U.S. at 258.    He entered into

an agreement to plead guilty to possession of gambling records in the second degree, which carried

a maximum sentence of one year.    *Id.*    The prosecutor agreed to make no recommendation as to

the sentence.    *Id.*    At sentencing, a new prosecutor, who presumably had no knowledge of the

agreement, recommended a one-year sentence, to which defense counsel objected.    *Id.* at 259-60.

The trial judge stated that the prosecutor's statement had not influenced him, noted that the

defendant had a lengthy record, and imposed the one-year maximum sentence.    *Id.*    The Supreme

Court granted certiorari and vacated the judgment, reasoning as follows:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.    Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a

promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

On this record, petitioner "bargained" and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor. It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done. That the breach of agreement was inadvertent does not lessen its impact.

We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty. We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge.

*Id.* at 262-63 (internal footnote omitted). The Supreme Court observed, in a footnote, that, "[i]f the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts." *Id.* at 263 n.2.

The decision of the TCCA on the post-conviction appeal was not "contrary to" *Santobello*. The facts of Harris' case are not "materially indistinguishable" from those of *Santobello,* which involved a prosecutor's failure to communicate the details of a plea agreement to other attorneys in the office. *See Williams,* 529 U.S. at 412-13. Here, by contrast, the alleged constitutional error

consisted of the trial judge's failure to advise Harris of the mandatory lifetime community supervision requirement during the plea colloquy. *Harris v. State,* 2011 WL 6747474, at *2.

Petitioner also has not satisfied his burden of demonstrating that the decision of the TCCA was an "unreasonable application" of *Santobello*. The Supreme Court has emphasized that

> "[c]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an "unreasonable application of" those holdings must be "objectively unreasonable," not merely wrong; even "clear error" will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White,* 134 S. Ct. at 1702 (internal citations & some quotation marks omitted).

The Supreme Court's opinion in *Santobello* does not exclude the possibility that the constitutional error found by the TCCA is subject to harmless-error analysis. The opinion in *Santobello* emphasized that "the fault here rests on the prosecutor, not on the sentencing judge." *Santobello,* 404 U.S. at 263. The Supreme Court also stressed "fairness in securing agreement between an accused and a prosecutor," the existence of "safeguards to insure the defendant what is reasonably due in the circumstances," and the "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Id.* at 261-62. None of those factors are present in the instant case, which did not involve a prosecutor's breach of a plea agreement.[18]

---

[18]In *Puckett,* the Supreme Court addressed whether *Santobello* forecloses harmless error or plain error review:

> *Santobello* did hold that automatic reversal is warranted when objection to the Government's breach of a plea agreement has been preserved, but that holding rested not upon the premise that plea-breach errors are (like "structural" errors)

The TCCA also considered whether Harris' plea "rest[ed] in any significant degree on a promise or agreement" that must be fulfilled. *See id.* at 262. The TCCA's holding that the trial judge's omission was harmless beyond a reasonable doubt was based on a finding that, because Petitioner accepted a guilty plea that included a sentence of life imprisonment without the possibility of parole on the murder count, the lifetime community supervision on the rape count cannot be material because it will never take effect. *Harris v. State,* 2011 WL 6747474, at *2 & n.2. In his reply, the prisoner takes issue with the TCCA's factual finding. He asserts that, "[i]n all actuality the petitioner is entitled to be released on September 09, 2051, if the petitioner is capable to live long enough. That is how the law was explained to the petitioner before the entry of the guilty plea. This factual assertion is further supported by a careful reading of T.C.A. § 40-35-501(i)(1), (2)." (Reply at 4-5, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 56 at PageID 1237-38.)

Harris' argument is not well taken. Tennessee law distinguishes between life imprisonment and life imprisonment without the possibility of parole:

> (1) Release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60% ) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of such sentence, notwithstanding the governor's power to

---

somehow not *susceptible*, or not *amenable*, to review for harmlessness, but rather upon a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an "essential" and "highly desirable" part of the criminal process.

*Puckett*, 556 U.S. at 141 (internal footnote omitted). The Supreme Court also observed, in a footnote, that "[w]e need not confront today the question whether *Santobello*'s automatic-reversal rule has survived our recent elaboration of harmless-error principles in such cases as [*Arizona v.*] *Fulminante*[, 499 U.S. 279 (1991)] and *Neder*." *Id.* at 141 n.3.

reduce prison overcrowding pursuant to title 41, chapter 1, part 5, or any sentence reduction credits authorized by § 41-21-236, or any other provision of law relating to sentence credits. A defendant receiving a sentence of imprisonment for life for first degree murder shall be entitled to earn and retain such sentence credits, but such credits shall not operate to make such defendant eligible for release prior to the service of twenty-five (25) full calendar years.

(2) There shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without possibility of parole for first degree murder.

Tenn. Code Ann. § 40-35-501(h) (1998).[19] The plea agreement, on its face, provides for a sentence of "Life without parole" on the felony murder count. (Request for Acceptance of Plea of Guilty [&] Pet. to Waive Trial by Jury & to Waive an Appeal, *State v. Harris,* No. 20CR1470 (Carroll Cnty. Cir. Ct.), ECF No. 24-1 at PageID 187.) The original judgment on the felony murder count also contained a check mark before "Life Without Parole," which is a separate option from "Life." (J., *id.*, ECF No. 24-1 at PageID 189.) It was, therefore, unambiguous at the time that Petitioner accepted the plea agreement that he would be sentenced to life imprisonment without the possibility of parole.[20] Therefore, the prisoner has not satisfied his burden of

_____

[19]The current version of the statute is similar.

[20]The relevance of the decision in *Penley v. State,* No. E2004-00129-CCA-R3-PC, 2004 WL 2439287 (Tenn. Crim. App. Nov. 1, 2004), on which Harris relies, is not explained. Penley pleaded guilty to first degree murder in exchange for a sentence of life imprisonment. *Penley,* 2004 WL 2439287, at *1. He later filed a post-conviction petition in which he claimed that he was unaware that he would have to serve fifty-one years before being eligible for parole. *Id.* at *2. Nothing in that decision supports Harris' current position that he will someday be eligible for parole.

Petitioner now claims, apparently for the first time, that he was told during the guilty plea hearing that he would be eligible for parole after serving fifty-one years. (Reply at 4-5, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 56.) The Court does not construe these statements as an attempt to amend the inmate's Petition to assert a new claim that was not previously presented to the state courts. As previously stated, any challenge to the felony murder conviction would be time-barred. The statement also does not establish that the decision of the TCCA "was based on an unreasonable determination of the facts in light of the evidence

37

demonstrating that the decision of the TCCA was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or that it was based on an objectively unreasonable factual finding.

For all the foregoing reasons, Claim 2 is without merit and is DISMISSED.

### C.      Denial of a Full and Fair Hearing (Claim 3)

In Claim 3, titled "Denial of a Full and Fair Hearing/sentence Hearing," the inmate avers that

> [t]he defendant was sentenced in abstentia without assistance of counsel.   The trial court summarily (sic) dismissed the post-conviction as an impermissible 2nd petition.   The court of appeals ruled the petition was permissible and had merit. Yet defendant was not permitted counsel to submitt (sic) an amended petition, object to evidence, submitt (sic) evidence or review what the record is/was utilized by the courts for authenticity.

(Pet. at PageID 8, *Harris v. Holloway,* No. 1:12-cv-01204-JDB-egb (W.D. Tenn.), ECF No. 1.)

Claim 3 is substantially similar to Claim 1, in which Harris complained that the amended judgment on the aggravated rape count was entered without the appointment of counsel and that counsel was not appointed to represent him on the second post-conviction proceeding.   For the reasons previously stated, he did not exhaust his claim arising from the failure to appoint counsel before entry of the amended judgment and, as there is no longer any means to do so, it is barred by procedural default.   Petitioner's objection to the procedures used to adjudicate his second post-conviction petition is not cognizable in a § 2254 petition.

Claim 3 is without merit and is DISMISSED.

---

presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   Harris has cited to no portion of the record for his second post-conviction proceeding in which he advised the state courts that he had been promised that he would be eligible for release after fifty-one years.

### D.    Illegal Arrest (Claim 4)

In Claim 4, titled "Illegal Arrest," the inmate asserts that

[t]he arresting officers submitted perjurid (sic) testimony to obtain the arrest warrant that D.N.A. taken from the victim "Matched" that of a sample taken from Defendant.   The sereology (sic) report is specific and does not state the D.N.A. matched.   And therefore the starvation, abuse and torture to extract a false confession based upon an illegal arrest (sic) should "shock" the conicese (sic) of this court.

(Pet. at PageID 10, *id.*, ECF No. 1.)

In his answer, Respondent argues that Harris did not exhaust this claim in state court and, as such, it is now barred by procedural default.   (Answer at 14-15, *id.*, ECF No. 28.)   The inmate insists that the claim was presented in his second post-conviction petition.   (*See* Pet. at PageID 10-11, *id.*, ECF No. 1.)   Although the issue was raised in the post-conviction petition (Pet. for Relief from Conviction or Sentence at 4-5, *Harris v. State,* No. 20CR1470 (Carroll Cnty. Cir. Ct.), ECF No. 24-7 at PageID 483-84), the only claims presented to the TCCA on the post-conviction appeal addressed the breach of contract, which arose after the entry of the original judgments (*see* Br. of Appellant at 1, *Harris v. State,* No. W2011-01578-CCA-R3-PC (Tenn. Crim. App.), ECF No. 24-8 at PageID 560).   Petitioner did not appeal the post-conviction court's determination that the additional claims in the second post-conviction petition were barred by the "one petition" rule. Because he has not fairly presented those claims to the state courts, they were not properly exhausted and are now procedurally barred.

Claim 4 is without merit and is DISMISSED.

Because every claim asserted by Harris is without merit, the Court DENIES the Petition. The Petition is DISMISSED WITH PREJUDICE and judgment shall be entered for Respondent.

## V.     APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Cockrell*, 537 U.S. at 335; *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005).   The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.   Rule 11, Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules").   A petitioner may not take an appeal unless a circuit or district judge issues a COA.   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.   28 U.S.C. §§ 2253(c)(2) & (3).   A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Cockrell*, 537 U.S. at 336; *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).   A COA does not require a showing that the appeal will succeed.   *Cockrell*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).   Courts should not issue a COA as a matter of course.   *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the Petition is meritless for the reasons previously stated.   Because any appeal by Harris on the issues raised in his Petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting

affidavit.   However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.   *See* Fed. R. App. P. 24(a)(4)-(5).   In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.   It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[21]

IT IS SO ORDERED this 19th day of June 2015.


s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[21]If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this order.   *See* Fed. R. App. P. 24(a)(5).